# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**GAYTHON McKENZIE,**                                                   **PLAINTIFF,**

**VS.**                                            **CIVIL ACTION NO. 1:07CV244-P-D**

**CITY OF TUPELO, MISSISSIPPI and**
**BANCORPSOUTH CENTER,**                                       **DEFENDANTS.**

## MEMORANDUM OPINION

This matter comes before the court upon Defendants' Motion for Summary Judgment [30]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

The plaintiff, Gaython McKenzie, filed the instant action in the Circuit Court of Lee County, Mississippi on September 5, 2007 alleging employment discrimination based on race in violation of Title VII, 42 U.S.C. §2000e, *et seq*. and §1981 against his former employers, the City of Tupelo, Mississippi and the Bancorpsouth Center. The defendants removed this action to federal court on October 11, 2007 on the basis of federal question jurisdiction.

In his Complaint the plaintiff avers that he worked as the Director of Security for the Bancoprsouth Center since March 1995. On May 6, 2006 he states that Kevan Kirkpatrick, Bancorpsouth's Marketing Director, requested that he provide security at a private party at Kirkpatrick's home which lasted from 5:00 p.m. to 9:00 p.m. When Kirkpatrick made the request, the plaintiff was already working a shift at the Bancorpsouth Center. The plaintiff avers that he arranged for a substitute to cover his shift at the Center. Near the end of the party, the plaintiff states that he "informed Mr. Kirkpatrick that he had forgotten to clock out at the Center when he left to go to Mr. Kirkpatrick's house [and] Mr. Kirkpatrick responded, 'Don't worry about it. I will take

1

care of it.'" Complaint at ¶ 21. On May 20, 2006, two weeks later, Kirkpatrick fired the plaintiff for falsifying his time card – *i.e.*, by not correcting his time card to reflect that the plaintiff was not working his shift at the Center while working at Kirkpatrick's private party. The plaintiff alleges that he was replaced by a white male, Richard Sansom, and that he is aware of other similarly situated white employees whose time cards contained incorrect information and were not fired – specifically, Scott Little, Tim Weaver, Bob Todd, and Judy Patterson.

In their motion for summary judgment, the defendants argue that the plaintiff's claims should be dismissed because: (1) the plaintiff cannot establish a *prima facie* case of racial discrimination since the examples of white employees given were not similarly situated – *i.e.*, none of them were working as head of security, in the plaintiff's case the overpayment was never corrected, and the comparative examples occurred in 2005 when the Center was under different management; (2) even if the court were to conclude the existence of a *prima facie* case, the defendants have provided a legitimate, non-discriminatory reason for the firing: the plaintiff knowingly submitted a false time card and was paid for time he did not work, a major violation of the Center's employment policies; and (3) the plaintiff has no evidence of racial animus by the decision-maker, Kevan Kirkpatrick, nor any other evidence that the adverse employment decision was made due to the plaintiff's race.

In his four-page response, the plaintiff reiterates his allegation that he forgot to clock out correctly on the date in question and that when he told Kirkpatrick on that very same day, Kirkpatrick told him "don't worry about it." The entirety of the plaintiff's response to the defendants' argument that the plaintiff cannot establish a *prima facie* case is: "Mr. McKenzie identified four white employees that had made mistakes on their time sheets that also caused them to be overpaid, but the Defendant did not fire them as it did Mr. McKenzie." The plaintiff denies that

the defendants' given reason for termination was legitimate and non-discriminatory by stating that he did not intentionally falsify his time card and that Kirkpatrick told him not to worry about it. Other than his allegation that Kirkpatrick told him not to worry about the time card and that four other white employees were not fired for mistakes on their time cards, the plaintiff cites no other evidence of racial discrimination.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. § 1981 and Title VII Race Discrimination Standards**

**a. § 1981**

Pursuant to 42 U.S.C. § 1981, it is unlawful to discriminate based on race in making and enforcing contracts, including employment contracts. "The term 'make and enforce contract' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Employees at-will may sue under § 1981 since the employee's promise to perform work for the employer in consideration for the employer's promise to pay the employee constitutes a contract within the meaning of § 1981. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir. 1998). "Under § 1981 as amended by the [1991] Act, *racial harassment and other discrimination* in an employment relation occurring *after contract formation* is actionable." *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002) (emphasis in original) Ultimately, § 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n.16 (1984).

To establish a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute [*i.e.*, the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship]." *Felton*, 315 F.3d at 483. The Fifth Circuit also wrote that "[u]sually, racial harassment is thought of in terms of Title VII [and] [a]long this line, our court has relied on Title VII principles for guidance in parallel § 1981 actions." *Felton*, 315 F.3d at 483.

Accordingly, this court will view the plaintiff's claims under § 1981 in the same light as his Title VII claims.

**b. Title VII**

Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(a). "Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Since the plaintiff has cited no direct evidence of racial discrimination in this case, the court must evaluate the plaintiff's circumstantial allegations through the *McDonnell Douglas* test.

1. Prima Facie Case

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted).

For the instant plaintiff, a prima facie case of race discrimination requires proof that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly-situated individuals of another race were treated more favorably. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

After considering his response to the defendant's motion for summary judgment, the court concludes that the plaintiff has not met his burden in demonstrating sufficient evidence to create a genuine issue of material fact that there was a person of another race treated more favorably that was *similarly* situated. As cited above, the evidence relied on to create a genuine issue of material fact must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir.

1978). Furthermore, to meet the *prima facie* case requirement in the *McDonell Douglas* test, the plaintiff must show that at least one other person of a different race was treated differently under circumstances "nearly identical" to his. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570-71 (5th Cir. 1982)).

Here, the plaintiff does not deny that Scott Little, Tim Weaver, Bob Todd, and Judy Patterson – the people of another race the plaintiff alleges were similarly-situated – were not directors of security, were not under direction of Kevan Kilpatrick when their time cards were found to be inaccurate, and ultimately changed their time cards to accurately reflect the time worked. The plaintiff neither attached nor referenced evidence establishing that the four white people in question were actually similarly situated as the plaintiff, other than the bare allegation that they had not been fired even though they turned in inaccurate time cards. This is insufficient evidence to establish that the circumstances with respect to any of the four people in question were "nearly identical."

Accordingly, since the plaintiff cannot establish a *prima facie* case of racial discrimination, the defendant's motion for summary judgment should be granted on this alone. Nevertheless, the court will continue the *McDonnell Douglas* analysis.

2. Legitimate, Non-Discriminatory Reason

Assuming *arguendo* that the plaintiff can establish a *prima facie* case of discrimination, "[t]he burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for [the adverse employment action]. This causes the presumption of discrimination to dissipate." *Laxton*, 333 F.3d at 578.

The defendant argues that Kilpatrick terminated the plaintiff for submitting a false time card and getting paid for time he did not actually work even after being allowed approximately two weeks to correct his time card. It is undisputed that the plaintiff in fact submitted a time card indicating he had worked at the Center during the same period of time he was working Kilpatrick's private party. It is also undisputed that the plaintiff was paid for that shift at the Center, though he was not there during the entire shift. Although the plaintiff alleges that Kilpatrick told him not to worry about it, a statement Kilpatrick denies, this does not belie the fact that the reason given for the plaintiff's termination was legitimately non-discriminatory.

3. Discrimination *vel non*

Assuming that the plaintiff can establish a *prima facie* case of discrimination and the defendant offers a legitimate, non-discriminatory reason for the adverse employment action, "[t]he plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of h[is] protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). The court in *Laxton* instructs:

> To carry this burden, the plaintiff must produce *substantial evidence* indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." ... The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and

8

uncontroverted evidence that no discrimination occurred. A decision as to whether judgment as a matter of law is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "

*Laxton*, 333 F.3d at 578-579. (internal citations omitted; emphasis added).

Essentially, the plaintiff's primary proof that the reason proffered for his termination was a pretext for racial discrimination is his allegation that Kirkpatrick, the decision-maker, told him not to worry about fixing his time card. More specifically, during the night when the plaintiff was providing security for Kirkpatrick's private party at his home, meanwhile remaining clocked in for his shift at the Bancorpsouth Center, the plaintiff's deposition reflects:

> Q. Did you have any discussions with Kevan Kirkpatrick about your timecard?
>
> A. I mentioned it to him, but he might not – he might not remember, but I know I mentioned it to him.
>
> Q. When did you mention it to him?
>
> A. A little later on that night. It was during the beer time. I told him that I was in such a hurry to get over there, that I didn't get a chance to clock out. And his response was, "don't worry about it."
>
> Q. Anything else he said?
>
> A. That was it.

Plaintiff's Deposition at 48-49.

Kirkpatrick denies that he had this discussion with the plaintiff. The defendant argues that even if Kirkpatrick made the statement, such a statement alone did not conclusively mean that he was giving the plaintiff permission to not correct his time card. The defendant argues that the plaintiff knew the rules about being accurate on one's time card and had the opportunity to correct

9

his card for approximately two weeks but chose not to do so.

Even assuming that Kirkpatrick did say "don't worry about it" to the plaintiff, thereby viewing the facts in a light most favorable to the plaintiff, the court concludes that this evidence alone is not the "substantial evidence" necessary pursuant to *Laxton* to create a genuine issue of material fact as to whether the defendant's legitimate, non-discriminatory reason given for the termination was in fact a pretext for racial discrimination. Indeed, in the context of the cited deposition excerpts, such a statement could reasonably be interpreted in more than one way. Not only could it have meant that the plaintiff had permission to not correct his time card and therefore be paid for work he did not do, it could also have meant that the plaintiff would not be penalized for the sole act of coming to work at a private party without having clocked out from his shift at the Center and that he could correct the card at the next reasonable opportunity.

What was meant by the comment "don't worry about it" or whether the comment was actually made by Kirkpatrick does not create a genuine issue of material fact warranting denial of the defendant's motion for summary judgment. Even if the jury believed that the comment was made *and* that it meant that the plaintiff had permission not to correct his time card by his supervisor, this would not be substantial evidence that the reason the plaintiff was terminated was for his race. The plaintiff has offered no evidence that the decision-maker had any racial animus against the plaintiff or any other member of his race.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion for Summary Judgment [30] should be granted. Therefore, the plaintiff's claims should be dismissed with prejudice. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of November 19, 2008.

                                            /s/ W. Allen Pepper, Jr.
                                            W. ALLEN PEPPER, JR.
                                            UNITED STATES DISTRICT JUDGE